Good morning. Richard Rome appearing for the defendant. So this is a criminal case where the defendant was convicted of, on two counts, one of importing meth, amphetamine, and aggravated identity theft. And the first issue that I would like to address is whether the jury trial waiver was valid. And what we have, we had a written waiver in this case, but the attorney would not sign off on the waiver. And when we put that in context of what happened with respect to the events prior to the time for the waiver, it would appear that the waiver was not a valid, knowing, and intelligent waiver. The waiver was taken on, just as a little context, on November 5th of 2013, but a series of events showed that the defendant had serious mental problems, all the way dating back to the previous fall, when the magistrate ordered a competency hearing because the defendant might be suffering from a mental disease or defect. There was a psychological report then that was made after that? After he was arrested, and I think the defense had the defendant evaluated, and I think within three days the doctor issued a report saying he suffered from depression and some other things. And then there was a hearing, they sent him to Butner, where the doctor at the defense, at that initial hearing, suggested that he might be rehabilitated if he got some care. And he was there for four months, and it appears that he was restored, according to all the doctor's reports, the evaluation there is pretty extensive and detailed. It looks like the district court judge accounted for that in his findings during the colloquy, and was pretty familiar with your client. So I guess, what specifically is your best argument, that he wasn't competent, or that, are you saying he wasn't competent to proceed with the trial, or that there was an issue with the colloquy? Well, I think that it was really the competence and the voluntariness. And I think there were two points on that, your honor, that I think were important. Number one, that the trial lawyer would not sign off and express his, I know he doesn't have to under the rule, but I think it would be unusual that he didn't agree. But I think even, just as important, is what the defendant himself said when he was asked about that waiver, if he understood it. And he said, there was an inquiry made, if he understood the advice, and he said, and I'm quoting from the record, No, not really. Not very well, your honor, but I feel that I'm guilty. So I think when you take that statement, coupled with all of the prior incidents that occurred, it was, you know. But when you look at the totality, though, I mean, I agree, we have to look at everything. It looks like the judge, you know, acknowledged that. It's not like he ignored that. He asked him, proceeded to ask him, in a couple of different ways, you know, to assure himself that the defendant's, you know, what the defendant wanted to do in terms of waiving the jury trial is, in fact, what he really wanted to do. And I think that's what the Cochran decision says that he should do. In short, he, as well, is that the district court judge should have a colloquy to satisfy himself and assure himself that the defendant understands. And in this case, it looks like the defendant, although he initially said that, proceeded to say, you know, that he did understand. And the district court judge had a discussion with the defense attorney because he, it's not like the district court ignored what the defense attorney was saying. He respected it, but said, you know, recognizing whose decision it was. So I guess I'm just trying to figure out what, you're saying that because he signed the waiver after that, plus the defense attorney's just not ability to go forward and say that I think he's, you know, competent or that I don't fully appreciate that that's enough, that that should be our test? Well, I think, though, just not to be redundant, but when the court, when the district court asked if he understood what was stated, he said, I'm guilty in response to a question as to whether he knew he was waiving his jury trial rights and that he didn't understand. So if he hadn't have said that, I think there would have been some extra leeway for the trial court, but when a defendant is asked, you understand you're waiving your jury trial, right to a jury trial, and the guy says, I'm guilty, then I think we have a problem here. I guess I'm a little surprised that Judge Burns proceeded, given that he said he didn't understand and that his attorney was advising him not to proceed without a jury. If he actually felt he was guilty, he might have been able to enter into a guilty plea and avoid a trial altogether, possibly get a favorable sentence. I'm just very concerned with this man's mental health and capacity at all. Were you the trial lawyer? No. No, I was not. No, that's what I'm saying. When viewed in the context of all the background that happened, I think that there's a, that's really what the... Well, what should have happened then? Because I'm just trying to figure out. I think the district court applied the test. I mean, and so the test should be every time the defense attorney, I mean, just to play this out, the defense attorney has pause or has concerns, then you don't proceed forward, even though the district court judge had the benefit of all the evaluation. I mean, the initial one, the subsequent one, four months, proceeded with asking him questions and rephrasing it. The current law that guides us right now seems to say that the district court has to be reasonably assured of the competency. And I think the district court here, it's not like he completely dismissed the defense attorney. He acknowledged it. He addressed it. They had a discussion about it. And so I appreciate that any time a defense attorney says that, you know, it has to give anybody pause. But I'm just trying to figure out then what would be the test then at this point? Well, I think the test is probably the, and I'm not saying that the legal test that the trial judge went through was wrong because it looks like he went through... Followed Cochran. He did. He followed the admonitions and there was a written waiver. There are three requirements under the federal rule. I think that to answer your question, I wouldn't say that it's every time a defense lawyer objects. I think that in the way the defendant himself was, when he made the comments to me, that kind of to me, you know, almost a year after he had originally or even more than a year after the original competency exam had been ordered by the magistrate, he was still having all of these problems. So I think it's a case by case and not just a lawyer objective. Although the report acknowledged, I mean, in depth, I think, that there was an issue of malingering with this particular defendant. I mean, there was a full-blown diagnosis or statement by more than one of the doctors who evaluated him while he was at Butner, which was an intensive sort of treatment that he got there. So shouldn't the district court be able to factor in everything, not just that, but everything in the mental health evaluation, including that, and then make a determination how to proceed? I just think that that's something that probably could be considered. Right. The only other thing I would add that was interesting on the Butner report, that while it concluded that he was not competent to assist in his defense, it also included that he was mentally ill at the same time, but then said that even though he's mentally ill, he can still assist. And that was more on the competency issue, but he could still assist in his defense. So Butner, while the report indicated there could be a trial that could go forward, it did. That's what happens all the time, though, with these issues that come up with competency. I mean, people have mental health issues. I mean, I think the primary diagnosis for your client was depression. Yes. And other related, but the primary diagnosis seemed to be depression. And I think the doctors make these evaluations all the time. And curiously, at the competency hearing later, there was no testimony from any defense expert, you know, countering what the report said. At the competency hearing, I believe you're correct on that. So, I mean, the judge had the report from Butner and nothing in terms of an expert from the defense to rebut it. Well, he did have testimony from the defendant's brother who testified at the competency hearing. Sure. Of course. I mean, there was some evidence. No, no, but I'm just saying of another professional, I'm just curious if they had testimony or a doctor's opinion or report. I would think that at that competency hearing where it was really key that the defense would offer it. You know, I'm not saying I don't appreciate all the issues that you're highlighting. I think that's what makes this case really interesting. But I'm just curious. I mean, what more or how this would have played out, I mean, otherwise, you know, I think we just need to be really careful in saying, you know, if a defense attorney has questioned, even though he's been through all these examinations, is that enough to say, oh, not competent? But isn't there a difference in whether or not someone is competent to stand trial, which is one of the issues in the case, from the question whether or not someone fully understands that when they're waiving their right to a jury trial, that they're going to be tried by a judge and they're not just choosing between, oh, I'm going to have a judge trial, as Judge Burns said, and all the same things apply, reasonable doubt and all that stuff, as opposed to a 12-person jury where if there are doubts raised about his guilt even by one person, I mean, his chances of being found not guilty are immeasurably greater going with a jury as opposed to Judge Burns. And it seems to me those are two different questions. He could be competent to stand trial but still not fully understand what he's doing by waiving his right to a jury trial. Well, I think that's true. I mean, those are two separate questions that are, you know, right. You have whether there's a… They seem to be collapsing them into one question. Well, I mean, they are because of his mental state, but I think that… But even setting that aside, what was his level of education? What did he know about an American jury system? Yeah, I mean, I don't know about the answer. I don't know if they talked about his level. I mean, other than he was given the general… Given the four admonitions from Cochran. But also I think the judge was kind of trying to convince him because he was saying, so proof beyond a reasonable doubt, presumption of innocence, all of the evidences, all of those apply. Well, that's true, but, you know, as if, well, he says, I would presume that you're innocent and I would not find you guilty. But it's just such a vastly different thing to have a judge who's been trying these cases over and over and over and thinks they're all guilty as opposed to a jury. Well, I don't know. Is there anything in here that would suggest that the judge thinks everyone is all guilty and that you can point to in the record? The trial judge? Yes. No, I mean, I can't say that I don't recall him saying anything to that effect. Just looking at the time briefly, there's a few other issues, but if this is the only issue, can I reserve my, I have about a minute and a half, so. Yes. I know there was a few other. Did you make an argument below that his pre-arrest statement was not made knowingly or voluntarily? Yes. You did voluntarily, but what about knowing and intelligently? Well, again, that kind of dovetails. The argument was raised, and we did state that what was just as a timeline, now it was four days after his statement was taken that the magistrate issued an order indicating that the magistrate thought that this defendant might be incompetent. Right, so was the statement, was he given his Miranda rights before he took the statement? Yes, he was given his Miranda rights. But my argument, what I would say there, is if four days later the magistrate issued an order indicating that she thought that the defendant was not competent, that was voluntary. But you didn't argue that in your brief. You argued voluntariness in your brief. Yes, that's my question. Yes, but I think it all comes together. Just if he was, if four days before he was, he gave a statement and then four days later the judge says, but no, I believe I did raise the competency issue. I'd have to go back and look at exactly how the arguments were. Tell us where you raised it when you have your rebuttal. Yes, I'll take a look. Yeah, I will do that. Thank you. I think the, I think. I think I'm through my 15 minutes here. Well, you can have a couple minutes. I think Mr. Jones, you're aware of the concerns that we've raised, and perhaps you could address those. Yes, good morning. I'm Randy Jones on behalf of the Appellee in the United States. I was the trial counsel in this case. And I think you have to view this case from the very beginning. And the facts have been laid out in our pleadings, but when the defendant was arrested on October 13th, he came to the port of entry and he was asked questions. He was driving a vehicle. He was very functional. He was very lucid. No problems at all with his demeanor. He told the driver or told the primary officer that he was going to San Ysidro. A dog alert on the vehicle. He was sent to secondary. They found the drugs. He was then interviewed by Agent Johnson. Agent Johnson provided him with all of his Miranda rights. He had the defendant read the Miranda rights out loud. He had him initial the Miranda rights individually to indicate that he understood. There was no problems with his answering the questions of Agent Johnson. And the key point during the post-arrest statement is that when he was asked what his name was at primary and at the post-arrest statement, he said it was Hector, which was his twin brother. So he's thinking already how I can get out of this crime. He not only tells the agent that his name was Hector. Didn't he have his documents in the name of Hector? He had his passport card. That was Hector, his twin brother. And he also told the agents that he was married and that he had the kids and named all of Hector's kids and Hector's wife. So it was only after the officer says, well, wait a minute. Your fingerprints come back differently. Then he admitted that he was lying. So this is not a man who is not in control of his faculties. Yes, he may have had mental or depression, being diagnosed as depression later on. But as the district court judge indicated, that's not unusual for folks that once they're caught to begin to feel that, as the district court said, the ghost is up and begin to feel depressed. And so if you look at it from the point of when he first came into the United States, there were no signs, no obvious signs to the primary officer or to the case agent who interviewed him that this defendant was suffering from any sort of mental illness that would prevent him from understanding, first of all, the waiver rights for Miranda. So with respect to that issue, we believe that the district court properly denied the motion to suppress the statements. Now, if you move forward to three days later after his arrest, that's when not the magistrate judge but the defendant's attorney raised the issue of competency. And Judge Adler, the magistrate judge, sent him, agreed to have the defendant evaluated by the folks at MCC. He was. And again, Dr. Gilbert's evaluation was that he suffered from severe depression. She didn't believe that he was competent to understand the proceedings against him to assist the defendant. But it had nothing to do with whether or not he could understand what was going on in a cognitive sense. So then he was, the district court judge adopted those fines and sent him to Butner. And at Butner, his competency was restored. So if you fast forward to the waiver of jury, the district court judge did exactly what the district court judge was supposed to do. He went through all of the differences between the jury trial and a bench trial, as laid out in Cochran. But the district court judge went even further. My opponent relies on the fact that the defendant's attorney didn't sign the waiver. But as this court knows, that's not a requirement. The court agreed to proceed with a bench trial. The government agreed to proceed with a bench trial. And the defendant agreed to proceed with a bench trial. Should it be a requirement? I'm just wondering, as a principal, what are the pros and cons? Well, the pros are that every defendant could argue that he has some competency issue. And if the defense attorney who's representing the defendant chooses not to sign the waiver, then we would never have a prosecution of someone who has mental illness. And we know that mental illness is not the only factor that you look at. No, we know that. Right. And so if that were the case, that the defendant has to have the defense counsel agree, it's the same thing as if the defendant wanted to agree to, the defendant wanted to proceed pro se. We go down a slippery slope in doing those kinds of things. How do we have assurance here that the jury trial waiver was made knowingly and intelligently? Well, we do what exactly the district court did. It went through the factors, the four factors. Then with respect to the waiver, the district court had that waiver read in Spanish language to the defendant in open court. The district court was able to view the defendant as he was listening to it and as he responded to the questions that were being asked on the waiver form. And the district court, in fact, in the statement, I mean, at the hearing, made note of the fact that the defendant was paying rapt attention to the interpreter as she read through the waiver form. He seemed to understand what was being said to him, and that as soon as the form, the interpreter had finished reading it to it, the defendant signed the form as any normal person would do in that particular case. So the two things that trouble me about this case is, one, that he said he didn't understand, and two, that he told his potential trier of fact, I am guilty. Right. And if you look at the rest of that colloquy, the district court, when the defendant made that statement, he didn't say that he didn't understand anything. And I'm going to try to get to you, if I can have a moment. I have the transcript in front of me. Okay. Well, the district court, he said what he said, but the district court didn't end the colloquy at that point. He continued on. He says, I understand that you feel that you're guilty. We're not at that point yet. I'm advising you of your rights. And that happens in a lot of cases where people are pleading guilty or have gone to court before a jury. They'll indicate that perhaps that they're guilty, but it's before the district court has finished reading the rights to them. And so the judge went further after he had said that to help clarify that by going over the waiver form with him, by having him go over the waiver form. So, okay, I'm going to ask you on a completely different subject. Okay. Because this is novel law in our circuit, at least. On the aggravated identity theft, what do we do with the fact that the district court found Hector not credible and suspected that he had given his passport to his brother to use voluntarily? Do we have precise law in the circuit on that? I was not able to find any precise law on that, but I think that when you look at the facts and circumstances of this case, remember the defendant testified at the hearing, and his credibility was at issue as well. And both he and Hector were trying to proffer this sort of notion that, you know, Hector had lost his ID. I don't believe there was any credible evidence. I'm sorry. I'm sorry. But it seems like everybody, there was a discussion from what happened at the trial. There was the issue of what if Hector agreed to let him use his identity, is that really theft? Is that what without authority means? And so it looks like there was a confab at the trial. The judge kind of was concerned about that. The defense attorney and I guess yourself, if you were the prosecutor, discussed it. And it looked like, from what I could see from the record, you all agreed or stipulated that whether the ID was actually stolen, if he had permission, that the elements of identity theft do not require such a showing of actual theft, I guess it is. Yes. The issues or the argument that was raised is that without lawful authority. And that's when we called in the people from the passport office to indicate that the defendant had not, had never applied for a passport book or passport card, and that Hector had, in fact, applied for a passport card. That's not my question, though. My question is, is there law in this circuit that says that even if the identity was not actually stolen, that you can still be convicted of aggravated identity theft? I know that there's law to that effect in other circuits. I'm wondering if for our circuit this is a case of first impression that we would have to publish if we agree that that's the law. I believe that we should agree that that is a law, that it doesn't have, whether he had permission or not from Hector, his brother, he didn't have lawful authority. Lawful authority is lawful authority given to him by the United States government. Right. But I'm just wondering, is there any case on point in the Ninth Circuit? It's not, I'm not saying I'm not going to agree with you. I'm just saying, is there a case? I don't believe that there is, but if you'd like for me to. No, I mean, you would have put it in your brief if you had found one, right? Exactly, correct. And given us a 28-J if one came out later, right? Correct. Okay. Well, if you hear of one, you can put in a 28-J letter. Will do. Are there any other questions? I do have a question on the evidence of the seal and the broken. It just wasn't clear for me from the record which seal was broken on the methamphetamine evidence. Were the cease packages placed in a larger package, or can you just talk to me about that? Yes, and I apologize for that, that the record wasn't clear on that point. In essence, what happens is the packages of drugs are boxed and sent to the lab. Once they're at the lab, the chemist will take the individual packages and usually break them all out and make into bulk quantities, in this case methamphetamine and cocaine, and test it that way, and then put all the packages back into a singular bag. And then what will happen is because the seizing officer would have sealed the packages and written their name on that seal, quite naturally when the chemist goes to test them, they would have to break those seals. And so that's what happened in this case. The actual seal was broken, but there was enough evidence to show that these were the drugs that came from that seizure. We had the actual testimony of the seizing officer, we had the photographs, and we had the signatures from both the seizing officer and the chemist who tested the drugs. So on the post-arrest statements, is it your position that the argument whether the statements were knowing and intelligent was waived because it wasn't raised below? I believe we did include that in our brief. But even if it's not waived, we believe that the facts show that he knowingly, intelligently, and voluntarily waived his rights. Okay, so you would want us to address that on the merits as opposed to asserting waiver? You're saying in the alternative? In the alternative, yes. Okay, assuming. Assuming that you found no waiver. I'm getting waivers confused here, but you see the waiver of that issue. In the alternative, we believe on the merits. We still have presented enough to show that it was knowingly, intelligently, and voluntarily waived. Okay. Are there no other questions? No. Okay, all right. Thank you. Thank you. You can have a minute. Just briefly to answer the, I think the answer to the question was that there was no Ninth Circuit case on the aggravated identity issue. I think that it came up during a discussion in the trial court, and I think it was a Rule 29 motion, and the judge cited just some out-of-circuit cases. So I think, and I didn't find any, not to say that one might not be out there, but I didn't see any Ninth Circuit, and that was what the trial court had indicated. With respect to the drugs now on this seal, my argument isn't that that's not the drugs, that the drugs were switched, but I think the test might have been contaminated somehow. Because there were two witnesses who testified at the trial, and they both acknowledged that the bags were broken in some fashion. The record was a little bit ambiguous, so I don't know if that wasn't the drugs, but I think that the test would come into question as to what happened here. But that goes to weight, not to admissibility, doesn't it? Well, I mean, I think there's a scale there, and I think the weight should be that we shouldn't give it much weight if the drugs were somehow… If it's substantially in the same condition, which substantially was in the same condition, then I think the district court had to make a decision on whether it went to the weight. Well, I mean, it's a little unusual. You don't see too many cases where they say, oh, yeah, the seal happens to be broken now that we're looking at it. But I guess it does happen. I can't recall any. With respect to the question you asked before I finished, I think there was a motion to suppress the statements down below, and I think you asked me if it was related to competency, and I think it's enough mixed in. Although, I mean, I basically took it from the brief, and we've used the word mental illness, mental state, mental condition. That's all on page 35 of the brief, so I think that page 36 talks about mental competency. So I think we've covered it sufficiently within the opening brief, and it was addressed down below, and there was a full-blown hearing down below also. Okay. Thank you very much. Thank you very much, counsel. U.S. v. Osona Alvarez will be submitted and will take up U.S. v. Torres.
judges: Noonan, Wardlaw, Murguia